[No. S124494. Aug. 3, 2006.]

BROOK DORE, Plaintiff and Appellant, v.
ARNOLD WORLDWIDE, INC., et al., Defendants and Respondents.

## COUNSEL

Magana, Cathcart & McCarthy, Clay Robbins III and Marc Carlson for Plaintiff and Appellant.

Law Offices of Jeffrey K. Winikow and Jeffrey K. Winikow for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Bergman & Dacey, Gregory M. Bergman, Mark W. Waterman, Beth D. Orellana and Robert M. Mason III for Defendants and Respondents.

Sonnenschein Nath & Rosenthal and Lloyd C. Loomis for Employers Group as Amicus Curiae on behalf of Defendants and Respondents.

Atlantic Legal Foundation, Martin S. Kaufman; Jackson Lewis, D. Gregory Valenza and Erika M. Barbara for Southern California Chapter of the Association of Corporate Counsel as Amicus Curiae on behalf of Defendants and Respondents.

Seyfarth Shaw, Stacy D. Shartin and Dennis DePalma for California Employment Law Council as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**WERDEGAR, J.**—Plaintiff alleges against his former employer various causes of action in connection with his termination. The trial court granted the employer summary judgment, but the Court of Appeal reversed. We agree with the trial court and, accordingly, reverse the judgment of the Court of Appeal.

## Background

Plaintiff Brook Dore was employed with an advertising agency in Colorado as a regional account director specializing in automobile accounts. In late 1998, Dore discussed with his employer the possibility of relocating to the employer's Los Angeles office.

In 1999, Dore learned that a management supervisor position was available in the Los Angeles office of defendant Arnold Worldwide, Inc., formerly known as Arnold Communications, Inc., (hereafter AWI). Dore interviewed with several AWI officers and employees. According to Dore, he was never told during the interview process that his employment would be terminable without cause or "at will." Dore alleges he was told that AWI had landed a new automobile account and needed someone to handle it on a long-term basis. He also was told that, if hired, he would "play a critical role in growing the agency," that AWI was looking for "a long-term fix, not a Band-Aid," and that AWI employees were treated like family. Dore alleges he learned that the two people previously holding the position for which he was being considered had been terminated for cause—one for committing financial indiscretions, the other because his work had not satisfied a client. Dore states that AWI offered him the management supervisor position by telephone in April 1999, and he orally accepted.

Later that same month, Dore received a three-page letter from Sharon McCabe, senior vice-president of AWI, dated April 6, 1999 (AWI's letter), purporting to "confirm our offer to join us as Management Supervisor in our Los Angeles office" and to state "[t]he terms of this offer." AWI's letter then listed, in bullet-pointed sections, a commencement date, compensation details, and various benefits (including reimbursement of relocation expenses, parking at the AWI offices, various types of insurance, expense reimbursement, and vacation).

AWI's letter also stated: "You will have a 90 day assessment with your supervisor at which time you will receive initial performance feedback. This assessment will also be the time that you will work with your supervisor to set objectives against which you will be evaluated at the time of your annual

review. After your assessment is complete, you and your supervisor will have the opportunity to discuss consideration for being named an officer of Arnold Communications."

In a separate paragraph central to the present dispute, AWI's letter stated: "Brook, please know that as with all of our company employees, your employment with Arnold Communications, Inc. is at will. This simply means that Arnold Communications has the right to terminate your employment at any time just as you have the right to terminate your employment with Arnold Communications, Inc. at any time."

AWI's letter requested that Dore sign and return the letter signifying his acceptance of these employment terms. Dore read and signed the letter.

AWI terminated Dore's employment in August 2001. Thereafter, Dore sued AWI and a related entity, Arnold Worldwide Partners (AWP), alleging (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional infliction of emotional distress, (4) fraud, and (5) negligent misrepresentation. AWI and AWP each filed a motion for summary judgment.

The trial court granted AWI's motion on the ground that Dore could not establish the existence of either an express or an implied-in-fact agreement that his employment was terminable only for cause. The trial court granted AWP's motion on the ground that AWP could not be held liable as Dore's employer for AWI's personnel decisions and conduct. Dore appealed.

The Court of Appeal affirmed in part and reversed in part. The court affirmed the judgment in favor of AWP as to liability and reversed the judgment in favor of AWI. The court remanded the matter to the trial court with directions to vacate its order granting summary judgment to AWI and enter a new order granting summary adjudication to AWI only on Dore's negligent misrepresentation cause of action. We granted AWI's petition for review.

### Discussion

Dore alleges that AWI, by various oral representations, conduct, and documents, led him reasonably to understand there existed between AWI and himself an implied-in-fact contract that provided he would not be discharged from his employment except for cause. AWI contends that its oral representations, conduct, and documents could not reasonably have raised any such understanding in Dore.

We take the facts from the record that was before the trial court when it ruled on AWI's motion for summary judgment. We review the trial court's

decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)

■ Dore acknowledges that a clear and unambiguous at-will provision in a written employment contract, signed by the employee, cannot be overcome by evidence of a prior or contemporaneous implied-in-fact contract requiring good cause for termination. (See cases cited in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 340 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) But he contends this rule cannot govern here because AWI's letter neither constitutes nor contains a clear and unambiguous agreement that his employment would be terminable without cause.

## A. *Dore's Contract Claims*

### 1. *"At any time"*

The Court of Appeal below agreed with Dore that AWI's letter, signed by Dore, was not clear and unambiguous with respect to cause for termination. Notwithstanding the letter's statement that "your employment with Arnold Communications, Inc. is at will," the court reasoned, by going on to define the term "at will" to mean that AWI had the right to terminate Dore's employment "at any time," AWI impliedly relinquished the right to terminate Dore without cause. We disagree.

The Courts of Appeal are in conflict over whether a provision in an employment contract providing for termination "at any time" or upon specified notice is, without more, reasonably susceptible to an interpretation allowing for the existence of an implied-in-fact agreement that termination will occur only for cause. The Court of Appeal in *Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358 [83 Cal.Rptr.2d 388] held such a provision is not thus susceptible; those in *Seubert v. McKesson Corp.* (1990) 223 Cal.App.3d 1514 [273 Cal.Rptr. 296], *Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718 [269 Cal.Rptr. 299], and *Bert G. Gianelli Distributing Co. v. Beck & Co.* (1985) 172 Cal.App.3d 1020 [219 Cal.Rptr. 203] held it is. (See also *Sherman v. Mutual Benefit Life Ins. Co.* (9th Cir. 1980) 633 F.2d 782, 784 [applying California law].)

*Seubert* concerned a wrongful termination action brought by a regional sales manager of a computer systems company against his employer for breach of contract, misrepresentation, and breach of the implied covenant of

good faith and fair dealing. Notwithstanding the plaintiff had signed an employment application stating that, " 'if hired, my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any prior notice' " (*Seubert v. McKesson Corp., supra,* 223 Cal.App.3d at p. 1517), the Court of Appeal, looking to other factors indicating the application "was not intended to be the entire employment agreement between the parties," ruled that extrinsic evidence supported the existence of an implied contract requiring cause for termination (*id.* at p. 1520).

In *Wallis,* an insurance agent entered into an agreement with the insurer she represented that provided her agency could be " 'terminated by either the Agent or [the insurance company] on three (3) months written notice.' " (*Wallis v. Farmers Group, Inc., supra,* 220 Cal.App.3d at p. 730.) After she was terminated, the agent brought an action alleging the parties had both an express oral and an implied-in-fact agreement that she would be terminated only for cause. The Court of Appeal found that, notwithstanding the contract was integrated on the subject of termination, because its termination provision was silent as to whether good cause was required, the language was reasonably susceptible of meaning either that no cause was required or that a separate agreement requiring good cause existed. Therefore, the court held, extrinsic evidence was admissible to determine the meaning of the written agreement. (*Id.* at pp. 730–731.)

In *Gianelli,* independent local beer wholesalers and distributors brought an action against a brewer of an imported brand of beer, alleging the brewer's termination of their distribution contracts without good cause breached those contracts. Each complaining party had signed a distribution agreement providing it would " 'continue in effect unless and until terminated at any time after January 1, 1973 by thirty days written notice by either party to the other.' " (*Bert G. Gianelli Distributing Co. v. Beck & Co., supra,* 172 Cal.App.3d at p. 1037.) The Court of Appeal held the agreements could reasonably be interpreted as consistent with an implied requirement of good cause for termination. (*Id.* at pp. 1038–1039.)

The termination clause at issue in *Bionghi* provided that the agreement "may be terminated by [the employer] hereto 30 days after notice in writing." (*Bionghi v. Metropolitan Water Dist., supra,* 70 Cal.App.4th at pp. 1361–1362.) The Court of Appeal held that the plain language of the clause was not reasonably susceptible to an interpretation requiring the employer to have good cause for termination. (*Id.* at p. 1361.) "In our view," the court stated, "a contract which provides that it may be terminated on specified notice cannot reasonably be interpreted to require good cause as well as notice for termination, unless extrinsic evidence establishes that the

parties used the words in some *special sense*. Instead, such a contract allows termination with or without good cause." (*Id.* at p. 1369, italics added.)

■ We disagree with Dore that the verbal formulation "at any time" in the termination clause of an employment contract is per se ambiguous merely because it does not expressly speak to whether cause is required. As a matter of simple logic, rather, such a formulation ordinarily entails the notion of "with or without cause."

### 2. AWI's letter

■ That the phrase "at any time" is not in itself ambiguous with respect to cause for termination does not preclude the possibility that AWI's letter, when considered as a whole, contains ambiguity on the topic. As California courts previously have observed, the "meaning of language is to be found in its applications. An indeterminacy in the application of language signals its vagueness or ambiguity. An ambiguity arises when language is reasonably susceptible of more than one application to material facts. There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application." (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246]; see also *Herzog v. National American Ins. Co.* (1970) 2 Cal.3d 192, 199, fn. 5 [84 Cal.Rptr. 705, 465 P.2d 841] ["language which might be considered ambiguous as applied to some circumstances is not necessarily ambiguous per se"].)

Accordingly, "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573].) "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641], citing numerous authorities.)

In this case, the trial court recognized that the presumption of at-will employment codified in section 2922 of the Labor Code can be overcome by an express or implied agreement to the contrary. (See *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 336.) Nevertheless, the court ruled that because the express written contract—i.e., AWI's letter—controls, it need not consider whether Dore's proffered extrinsic evidence establishes the existence of an earlier implied agreement to terminate only for cause.

The Court of Appeal, in reaching the contrary conclusion, relied primarily on the fact that AWI's letter, after stating that Dore's employment is "at will," defines "at will" in a manner that refers expressly only to the duration of the contract (i.e., as meaning "that Arnold Communications has the right to terminate your employment at any time") and does not state explicitly whether cause is required.[1] The Court of Appeal also relied on evidence extrinsic to the letter, in particular, that AWI required Dore to sign a postemployment noncompetition and nondisclosure agreement.

■ The trial court's ruling was correct. The language of the parties' written agreement is unambiguous. AWI's letter plainly states that Dore's employment with AWI was at will. Indeed, as the trial court observed, Dore admitted as much and further admitted that he "read, signed, understood and did not disagree with the terms of the letter." Even the Court of Appeal acknowledged that the term "at will" when used in an employment contract normally conveys an intent employment may be ended by either party "at any time without cause." Although AWI's letter also states that AWI would provide Dore a "90 day assessment" and "annual review," these provisions, in describing AWI's employee evaluation schedule, neither expressly nor impliedly conferred on Dore the right to be terminated only for cause.

■ That AWI's letter went on to define at-will employment as employment that may be terminated at any time did not introduce ambiguity rendering the letter susceptible of being interpreted as allowing for an implied agreement that Dore could be terminated only for cause. In defining at-will employment, AWI used language similar to the language the Legislature used in our statutory provision. Labor Code section 2922 says that an "employment, *having no specified term*, may be terminated at the will of either party on notice to the other." (Italics added.)

"An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice." (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at p. 335.) For the parties to specify—indeed to emphasize—that Dore's employment was at will (explaining that it could be terminated at any time) would make no sense if their true meaning was that his employment could be terminated only for cause. Thus, even though AWI's letter defined "at will" as meaning "at any time," without specifying it also meant without cause or for any or no reason, the letter's meaning was clear.

■ Nor did Dore's proffered extrinsic evidence render AWI's letter ambiguous concerning whether he could be terminated only for cause. As

---

[1] The court also noted that AWI's letter states that Dore would be considered for a position as an officer of AWI after a 90-day assessment period.

noted, Dore declared that he was told his role would be "critical" because AWI "needed a long-term fix" of certain problems and wanted Dore to "build a relationship" with an important new client. He also testified that he learned in interviews that some people at AWI had been employed there for long periods and he was assured the company had a family atmosphere. Even if credited, such evidence would not support an inference that Dore reasonably understood AWI's letter as consistent with a promise not to terminate him without cause. "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." (*Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 847 [44 Cal.Rptr.2d 227].)

We conclude, in sum, that AWI's letter contained no ambiguity, patent or latent, in its termination provisions. Accordingly, we agree with the trial court that no triable issues of fact exist with respect to Dore's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

### B. *Dore's Fraud Claim*

Dore alleges that AWI induced him to leave his long-standing, secure employment with an advertising agency in Denver and relocate to Los Angeles by promising him that his employment with AWI would continue indefinitely so long as he performed in a proper and competent manner, that he would not be demoted or discharged except for good cause, and that he would be given notice and a meaningful opportunity to respond to any unfavorable evaluations of his performance. Dore alleges these promises were false in that AWI had no intention of performing them at the time they were made and that he justifiably relied on AWI's promises and suffered damages when AWI failed to perform them. (See generally *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638–649 [49 Cal.Rptr.2d 377, 909 P.2d 981].)

AWI contends it was entitled to summary judgment on Dore's promissory fraud cause of action because Dore produced insufficient evidence of misrepresentation, intent not to perform, and reliance. As we agree with AWI on the reliance point, we need not address the others.

Dore conceded in his deposition that no one at AWI specifically told him he would be employed there so long as his work was satisfactory or that he could be fired only for good cause. Dore admits, moreover, that he read, signed, and understood AWI's letter stating "the terms" of his employment. As demonstrated above, the letter did not contain promises of long-term employment or that termination would be only for cause; AWI expressly and

unambiguously stated that Dore's employment was at will. For all these reasons, we agree with the trial court that Dore's admission he signed AWI's letter stating his employment was at will and terminable at any time as a matter of law defeats any contention that he reasonably understood AWI to have promised him long-term employment.

In accordance with the foregoing, we agree with the trial court that there exists no triable issue of fact with respect to Dore's cause of action for fraud.

### Disposition

For the foregoing reasons, the judgment of the Court of Appeal is reversed.[2]

George, C. J., Kennard, J., Chin, J., and Moreno, J., concurred.

**BAXTER, J., Concurring.**—I agree with the result reached by the majority and with the bulk of their reasoning. Dore signed, and admitted he read, understood, and did not disagree with, Arnold Worldwide's (AWI) letter stating the terms of his employment. This letter could hardly have made it clearer that the employment was "at will." The letter used that exact phrase, the meaning of which admits no ambiguity. Nor did the letter introduce ambiguity by saying further that this meant Dore could be terminated "at any time[,] just as [Dore] ha[d] the right to terminate [his] employment with [AWI] at any time." On the contrary, that is precisely how our statutory law explains the concept of "at will" employment. (See Lab. Code, § 2922 ["An employment, *having no specified term,* may be terminated *at the will* of *either* party on notice to the other." (Italics added.)].)

No rational person could believe this language meant both parties were obliged to continue the employment relationship except upon "good cause." The words "at will" and "at any time," as used in the letter, would make no sense if the parties really meant the opposite—that good cause was required for termination.

It follows beyond doubt that the letter expressed the parties' mutual understanding the relationship could be terminated by either party as desired, for any or no reason. I therefore concur in the majority's conclusion that the letter contained no ambiguity, patent *or latent,* and that the extrinsic evidence proffered by Dore could not contradict the letter's plain meaning.

---

[2] *Seubert v. McKesson Corp., supra,* 223 Cal.App.3d 1514, *Wallis v. Farmers Group, Inc., supra,* 220 Cal.App.3d 718, and *Bert G. Gianelli Distributing Co. v. Beck & Co., supra,* 172 Cal.App.3d 1020, are disapproved to the extent they are inconsistent with this opinion.

However, I cannot join the majority's general endorsement of *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [9 Cal.Rptr. 561, 442 P.2d 641] (*Pacific Gas*). *Pacific Gas* essentially abrogated the traditional rule that parol evidence is not admissible to contradict the plain meaning of an integrated agreement by concluding that, even if the agreement "appears to the court to be plain and unambiguous on its face," extrinsic evidence is admissible to expose a *latent* ambiguity, i.e., the possibility that the parties actually intended the language to mean something different. (*Id.* at p. 37.)

Read in its broadest sense, *Pacific Gas* thus stretched the unremarkable principle that extrinsic evidence is admissible to resolve a contractual ambiguity into a rule that parol evidence is *always* admissible to *demonstrate* ambiguity *despite* facial clarity. The effect is that, despite their best efforts to produce a clear written agreement, parties can never confidently conduct their affairs on the basis of the language they have drafted.

Predictably, the *Pacific Gas* decision has drawn strong criticisms. (See, e.g., Karlin & Karlin, *The California Parol Evidence Rule* (1992) 21 Sw.U. L.Rev. 1361, 1374–1385.) Judge Kozinski succinctly expressed them in *Trident Center v. Connecticut General Life Ins. Co.* (9th Cir. 1988) 847 F.2d 564: "Under *Pacific Gas*, it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence. If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity. If that evidence raises the specter of ambiguity where there was none before, the contract language is displaced and the intention of the parties must be divined from self-serving testimony offered by partisan witnesses whose recollection is hazy from passage of time and colored by their conflicting interests." (*Trident Center, supra,* at p. 569.)[1]

To their credit, it appears the majority here have declined to apply *Pacific Gas* quite so broadly. On the one hand, they repeat mischievous statements from *Pacific Gas* and its progeny that extrinsic evidence of intent may be

---

[1] In this court, Justice Mosk soon stated his own misgivings about his participation in the *Pacific Gas* majority, noting that the decision had "contributed" "toward emasculation of the parol evidence rule." (*Delta Dynamics, Inc. v. Arioto* (1968) 69 Cal.2d 525, 531 [2 Cal.Rptr. 785, 446 P.2d 785] (dis. opn. of Mosk, J.).) Expressing sentiments later echoed by Judge Kozinski, Justice Mosk observed that "it has become virtually impossible under recently evolving rules of evidence to draft a written contract that will produce predictable results in court. The written word, heretofore deemed immutable, is now at all times subject to alteration by self-serving recitals based upon fading memories of antecedent events. This, I submit, is a serious impediment to the certainty required in commercial transactions." (*Id.* at p. 532.)

admissible even when the contract's language appears " 'unambiguous on its face.' " (Maj. opn., *ante*, at p. 391.) On the other hand, however, they assert that " '[a]n ambiguity arises [only] when language is reasonably susceptible *of more than one application to material facts.*' " (*Ibid.*, italics added.)

If I understand the majority's premise, a "latent" ambiguity is simply one that becomes *manifest* when one attempts to apply the contract's language to the specific facts that gave rise to the parties' legal dispute. Even then, extrinsic evidence is admissible only to prove a meaning the contract's language will reasonably accommodate. Thus here, the majority are able to say, in effect, that the language of AWI's letter is not ambiguous as applied to the particular facts (i.e., Dore's termination) that gave rise to the dispute between AWI and Dore.

I entirely agree that *Pacific Gas* should be limited at least to the extent the majority imply. I hope the majority's limiting "gloss" will be noted by the bench and bar, and will signal that written agreements whose language appears clear in the context of the parties' dispute are not open to claims of "latent" ambiguity.

Still, it may be time for a fuller reconsideration of the meaning and scope of *Pacific Gas*. I am open to undertaking such a comprehensive reexamination in an appropriate case. With that caveat, I concur in the majority's reasoning and result.

Corrigan, J., concurred.

**MORENO, J.,** Concurring.—I concur in the majority opinion, but write separately to emphasize one point.

The majority devotes substantial attention to employment agreements that authorize termination "upon notice," or after a specified notice period. (Maj. opn., *ante*, at pp. 388–391, discussing *Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358 [83 Cal.Rptr.2d 388] and *Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718 [269 Cal.Rptr. 299].) But the written agreement before us did not use the words "upon notice," or any equivalent phrasing. Instead, the agreement allowed for termination "at any time." Our analysis is properly directed at this "at any time" language. The majority has no occasion to express, and does not express, any view as to whether providing for termination "upon notice" also connotes a mutual intention to create an at-will employment arrangement. (See maj. opn., *ante*, at pp. 390–391.)

In my view, a provision that allows for termination "upon notice" does not, by itself, shed light on whether the parties intended an at-will employment contract, or a relationship terminable only for cause. I concur in the majority opinion with the understanding that it takes no position on this issue.