[No. C052566. Third Dist. Dec. 21, 2007.]

WILLIAM BERNARD, Plaintiff and Appellant, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.,
Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part 2 of the Discussion.

Counsel

Britt & Perkins, Ryan F. Perkins; and William P. Tedards, Jr., for Plaintiff and Appellant.

Orrick, Herrington & Sutcliffe and George A. Yuhas for Defendants and Respondents.

Opinion

**DAVIS, Acting P. J.**—Plaintiff William Bernard (Bernard) had a long-standing insurance agency, representing the group of defendants State Farm insurance companies. He claims that two of his State Farm supervisors misrepresented the job requirements for a sales program to which he was assigned, requirements that he physically could not carry out following injuries sustained in a car collision. As a result, Bernard alleges that he was forced to resign.

Bernard sued State Farm and the two supervisors (collectively, State Farm) for intentional misrepresentation, negligent misrepresentation, and breach of the contractual covenant of good faith and fair dealing, all directed to the supervisors' misrepresentations that resulted in his constructive (forced) termination.[1] The trial court granted summary judgment for State Farm.

In the unpublished portion of this opinion, we conclude that the result of the alleged misrepresentations was indistinguishable from an ordinary constructive wrongful termination, thereby precluding a tort-based cause of action for misrepresentation. (*Hunter v. Up-Right, Inc.* (1993) 6 Cal.4th 1174 [26 Cal.Rptr.2d 8, 864 P.2d 88] (*Hunter*); see also *Lazar v. Superior Court* (1996) 12 Cal.4th 631 [49 Cal.Rptr.2d 377, 909 P.2d 981] (*Lazar*).)

██ In the published portion of this opinion, we conclude that the agency agreement between State Farm and Bernard could be terminated at will, thereby precluding a contract-based cause of action for breach. (See *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384 [46 Cal.Rptr.3d 668, 139 P.3d 56] (*Dore*).)

---

[1] A fourth cause of action for unfair and deceptive business practices (Bus. & Prof. Code, § 17200 et seq.) was summarily adjudicated. Bernard does not challenge this ruling.

DISCUSSION

## 1. Standard of Review

We review the trial court's summary judgment decision independently, "considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Dore, supra*, 39 Cal.4th at p. 389.)

We will incorporate the summary judgment evidence in our discussion of the two issues on appeal: (1) the misrepresentations and constructive termination (*Hunter/Lazar*); and (2) the at-will agency agreement (*Dore*).

## 2. The Misrepresentations and Constructive Termination (Hunter/Lazar)[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## 3. The At-will Agency Agreement (Dore)

■ Bernard has also sued State Farm for breach of the covenant of good faith and fair dealing based on the misrepresentations of his two supervisors. The covenant of good faith and fair dealing is implied in every contract to ensure that the benefits expressed in the contract are achieved. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683–684 [254 Cal.Rptr. 211, 765 P.2d 373].)

■ Bernard's remedy for his two supervisors' misrepresentations is, at most, in light of the causes of action alleged in his complaint and the proper summary adjudication of his tort-based misrepresentation actions, a contract-based cause of action for constructive wrongful termination. (See *Hunter, supra*, 6 Cal.4th at pp. 1184, 1186.) But even this remedy is foreclosed if State Farm may terminate at will its contract (agency agreement) with Bernard. This is because generally an at-will employment may be ended by either party at any time without cause, for any or no reason. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 & fn. 8 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; see Lab. Code, § 2922 [setting forth a presumption that an "employ-

---

[*]See footnote, *ante*, page 304.

ment, having no specified term, may be terminated at the will of either party on notice to the other"]; cf. *Hunter, supra,* 6 Cal.4th at pp. 1184, 1186 [the employee in *Hunter* contractually could be terminated only for good cause, and therefore could establish a contract-based cause of action for constructive wrongful termination based on misrepresentation in the course of the termination].)

As we shall explain, State Farm could terminate at will its agency agreement with Bernard. Consequently, Bernard cannot maintain his cause of action for breach of the covenant of good faith and fair dealing based on his two supervisors' misrepresentations.

The agency agreement between State Farm and Bernard states as pertinent regarding termination:

"III A. You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address.

"III B. In the event we terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Board of Directors of the Companies, as amended from time to time."

In *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641] (*Pacific Gas*), the state Supreme Court established rules governing the use of parol evidence to determine the meaning of contractual language where the contract appears clear and unambiguous and is "integrated" (a contract is integrated if it constitutes the final expression of the agreement or of a particular subject in the agreement; the State Farm agency agreement is integrated). (See *Dore, supra,* 39 Cal.4th at p. 391; see also *Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358, 1364 [83 Cal.Rptr.2d 388] (*Bionghi*).)

■■ Under *Pacific Gas,* "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether [the instrument] appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Pacific Gas, supra,* 69 Cal.2d at p. 37; accord, *Dore, supra,* 39 Cal.4th at p. 391.) A contractual ambiguity arises when the contract's language is reasonably susceptible of more than one

application to material facts. (See *Dore, supra*, 39 Cal.4th at p. 391; *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246].) *Pacific Gas* makes clear, though, that "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written [integrated] contract," but only to interpret the terms in the contract. (*Pacific Gas, supra*, 69 Cal.2d at p. 39; see *Appling v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 340 F.3d 769, 777 (*Appling*).)

In its recent decision in *Dore*, the California Supreme Court resolved a conflict in the Courts of Appeal "over whether a provision in an employment contract providing for termination . . . upon specified notice is, without more, reasonably susceptible to an interpretation allowing for the existence of an implied-in-fact agreement that termination will occur only for cause." (*Dore, supra*, 39 Cal.4th at p. 389.) For our purposes, the Court of Appeal conflict featured in *Dore* pitted the decision in *Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718 [269 Cal.Rptr. 299] (*Wallis*), which concluded that such a termination-notice provision is reasonably susceptible to this interpretation, against the decision in *Bionghi, supra*, 70 Cal.App.4th 1358, which concluded it is not. *Dore* sided with *Bionghi* and disapproved *Wallis*, which spells trouble for Bernard here. (*Dore, supra*, 39 Cal.4th at p. 394, fn. 2.)

In *Wallis*, similar to here, an insurance agent and the insurance company she represented had an agreement providing that her agency could be " 'terminated by either the Agent or [the insurance company] on three (3) months written notice.' " (*Wallis, supra*, 220 Cal.App.3d at p. 730; see *Dore, supra*, 39 Cal.4th at p. 390.) *Wallis* found that the agency agreement was integrated on the subject of termination (i.e., provided the complete expression on that subject). (*Wallis, supra*, at p. 730.) But *Wallis* concluded that since the termination provision was silent as to whether good cause was required, the language of the provision was reasonably susceptible to meaning either that good cause was required or that it was not. Therefore, extrinsic evidence was admissible to determine the meaning of the termination provision. (*Wallis, supra*, 220 Cal.App.3d at pp. 730–731; see *Dore, supra*, 39 Cal.4th at p. 390.) The extrinsic evidence in *Wallis* showed that the insurance company had modified the termination provision to omit "without cause" language, had provided a termination review process, and had stated that termination would not occur without cause. (*Wallis, supra*, 220 Cal.App.3d at pp. 731–732.) (Bernard seeks to introduce almost identical extrinsic evidence here: State Farm omitted "with or without cause" language from its termination provision; provided a termination review process; and stated in its company magazine in 1977 that termination would not occur without a serious breach.) As noted, *Dore* disapproved *Wallis*. (*Dore, supra*, 39 Cal.4th at p. 394, fn. 2.)

But *Dore* found favor with the way the *Bionghi* court read the termination provision before it. The termination provision in *Bionghi* stated that the agreement " 'may be terminated by [the employer] . . . 30 days after notice in writing . . . .' " (*Bionghi, supra,* 70 Cal.App.4th at p. 1361; see *Dore, supra,* 39 Cal.4th at p. 390.) As characterized by *Dore, Bionghi* concluded that the plain language of this provision was not reasonably susceptible to an interpretation requiring the employer to have good cause for termination. (*Bionghi, supra,* 70 Cal.App.4th at p. 1361; see *Dore, supra,* 39 Cal.4th at pp. 390–391.) *Bionghi* found that *Wallis*'s approach erroneously permitted extrinsic evidence to be introduced to *add* a "good cause" term to an integrated contract, contrary to *Pacific Gas* and its progeny. (*Bionghi,* at pp. 1368–1369; see also *Appling, supra,* 340 F.3d at p. 778 [concluding that the State Farm agents there erroneously sought to introduce extrinsic evidence to add a "good cause" term to the termination provision in the State Farm agency agreement, rather than to properly interpret the words of that provision].) *Pacific Gas,* said *Bionghi,* is "not a cloak under which a party can smuggle extrinsic evidence to add a term to an integrated contract, in defeat of the parol evidence rule." (*Bionghi, supra,* at p. 1365.)

Under *Dore,* then, the termination provision here stating in full that "You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address" is not reasonably susceptible to an interpretation requiring good cause for termination. (See *Dore, supra,* 39 Cal.4th at p. 393, quoting *Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 847 [44 Cal.Rptr.2d 227] [" 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over.' "].)

We do need to consider an additional issue from *Dore,* however. As noted, *Dore* framed the *Wallis-Bionghi* conflict as "whether a provision in an employment contract providing for termination . . . upon specified notice is, *without more,* reasonably susceptible to an interpretation" allowing termination only for cause. (*Dore, supra,* 39 Cal.4th at p. 389, italics added.) This raises the issue: Does the termination-review provision in the State Farm agency agreement provide for this "more" contemplated by *Dore,* i.e., more than simply termination upon specified notice? We think not.

The termination-review provision in the State Farm agency agreement, which is placed just after the termination-notice provision, specifies that "In the event we [i.e., State Farm] terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Board of Directors of the [State Farm] Companies, as amended from time to time."

For three reasons, we do not think that this termination-review provision provides the "more" contemplated in *Dore*.

First, the insurance agency agreement in *Wallis* on the subject of termination nearly mirrors the State Farm agency agreement at issue here, providing termination upon written notice in one provision while in the very next provision setting forth a procedure by which an agent can request review of a termination. (*Wallis, supra*, 220 Cal.App.3d at pp. 726, fn. 4, 730; see *Dore, supra*, 39 Cal.4th at p. 390.) Yet *Dore*, in discussing *Wallis*, focused simply on the termination-notice provision and did not mention the termination-review provision as providing something "more" to the termination-notice provision. (See *Dore, supra*, 39 Cal.4th at pp. 389–390.)

■ Second, we agree with decisions that have characterized the State Farm termination-review provision as merely providing an internal forum, primarily for State Farm's benefit, for reconsidering a decision to end an agency agreement (e.g., where a good agent has been terminated merely because of a personality conflict with an immediate supervisor). As these decisions have stated, the " 'ultimate decision on whether or not to terminate the agency still resides within the discretion of [either contracting party]' "; the termination-review procedure does not substantively transform termination upon notice from being at-will termination. (*Ex parte Gardner* (Ala. 2001) 822 So.2d 1211, 1218–1219, quoting *Kaldi v. Farmers Ins. Exch.* (2001) 117 Nev. 273 [21 P.3d 16, 21].)

And finally, every published decision we have found concludes that the termination-notice and termination-review provisions in the State Farm agency agreements create an at-will contract between State Farm and its agents. (*Appling, supra*, 340 F.3d at p. 778; *Ex parte Gardner, supra,* 822 So.2d at pp. 1217–1219; *Olander v. State Farm Mut. Auto. Ins. Co.* (8th Cir. 2003) 317 F.3d 807, 811–812 (en banc); *Mooney v. State Farm Insurance Companies* (D.N.H. 1972) 344 F.Supp. 697, 699–700; *Melnick v. State Farm Mut. Auto. Ins. Co.* (1988) 106 N.M. 726 [749 P.2d 1105, 1110–1111].)

We conclude that State Farm may terminate at will its agency agreement with Bernard. Consequently, Bernard cannot maintain his cause of action for breach of the covenant of good faith and fair dealing based on his two supervisors' misrepresentations that were made in the course of that termination.

The trial court properly granted summary judgment to the two supervisors and State Farm.

## DISPOSITION

The judgment is affirmed. State Farm shall recover its costs on appeal.

Morrison, J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 2008, S160571. Moreno, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.