FILED

JUN 29 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHILOH HEAVENLY QUINE, FKA Rodney James Quine, | No. 17-16148 |
| Plaintiff-Appellee, | D.C. No. 3:14-cv-02726-JST |
| and | |
| MICHAEL HERNANDEZ CONTRERAS; et al., | MEMORANDUM[*] |
| Intervenor-Plaintiffs, | |
| v. | |
| SCOTT KERNAN, Secretary of California Department of Corrections and Rehabilitation; et al., | |
| Defendants-Appellants. | |

| | |
|---|---|
| SHILOH HEAVENLY QUINE, FKA Rodney James Quine, | No. 17-16212 |
| Plaintiff-Appellant, | D.C. No. 3:14-cv-02726-JST |
| and | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

MICHAEL HERNANDEZ CONTRERAS; et al.,

          Intervenor-Plaintiffs,

 v.

SCOTT KERNAN, Secretary of California Department of Corrections and Rehabilitation; et al.,

          Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted June 13, 2018
San Francisco, California

Before:  MURPHY,[**] PAEZ, and IKUTA, Circuit Judges.

The California Department of Corrections and Rehabilitation (CDCR) appeals a district court order enforcing a settlement agreement between CDCR and plaintiff Shiloh Quine.  We have jurisdiction under 28 U.S.C. § 1292(a)(1).

The district court erred in concluding that CDCR breached its obligations under Section 1(G) of the settlement agreement, which states:

---

[**]    The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

> CDCR shall review and revise its policies to allow inmates identified by medical or CDCR personnel as transgender or having symptoms of gender dysphoria [referred to hereafter as "Identified Inmates"] access to property items available to CDCR inmates consistent with those inmates' custody and classification factors, including property items that are designated as available to a specific gender only. Before those policies are final, Plaintiff shall have the opportunity to comment on its specific language, including provisions that limit certain property because of safety and security concerns.

CDCR fully complied with the requirements in Section 1(G) to review and revise its policies. CDCR reviewed and revised its regulations to allow Identified Inmates to "possess the state-issued clothing that corresponds to their gender identities in place of the state-issued clothing that corresponds to their assigned sex at birth at designated institutions," Cal. Code Regs. tit. 15, § 3030(c), as well as creating the "Transgender Inmates Authorized Personal Property Schedule" (TIAPPS), a property schedule for Identified Inmates that significantly expanded the list of available items. *Id.* § 3190(d). CDCR also fully complied with the requirement to give Quine "the opportunity to comment" on the regulation and TIAPPS' specific language before they were finalized; CDCR then revised its policies in response to these comments.

The district court erred in concluding that even after CDCR's policies were final, Quine could raise arguments that the list of property items in TIAPPS was

3

unsatisfactory. The settlement agreement states that CDCR would provide access "to property items available to CDCR inmates," but did not otherwise specify which property items would be included, other than that the list would include "items available to CDCR inmates consistent with those inmates' custody and classification factors." Nor did the settlement agreement state that Quine could raise a dispute with respect to items not included on the list. Therefore, Quine's argument that the list of property items in TIAPPS is unsatisfactory is not a dispute between the parties concerning the Agreement.

The district court's conclusion that it could consider extrinsic evidence to alter the settlement agreement is erroneous. We review de novo whether a written contract is reasonably susceptible of a proffered meaning. *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). Because the district court relied solely on the undisputed transcript of a settlement conference and did not make any credibility determinations or fact finding, we likewise review the district court's evaluation of the extrinsic evidence de novo. *See Winet*, 4 Cal. App. 4th at 1166 ("[W]hen the competent parol evidence is not conflicting, construction of the instrument is a question of law, and the appellate court will independently construe the writing."); *see also L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989)

4

(explaining that, although an appellate court must defer to a trial court's "findings of fact," the "principles of contract law applied to those facts are reviewed de novo"); *In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 632 (9th Cir. 1984) ("When the interpretation includes a review of factual circumstances surrounding the contract, the principles of contract interpretation applied to those facts present issues of law which this court can freely review."). Reviewed de novo, the language in the settlement agreement giving Quine "the opportunity to comment" on the revised property policy before it was final is not reasonably susceptible of an interpretation that Quine "could dispute the exclusion of particular property items from CDCR's policy," as deficient under the Equal Protection Clause, or argue that CDCR's revision of its policies was otherwise defective. *Cf. Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006). Any statement made by CDCR's counsel before the settlement agreement was executed constituted at most a different agreement that cannot be admitted to contradict the integrated settlement agreement. *See Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 344 (2004). Therefore, we reverse the district court's order requiring CDCR to incorporate certain items into the TIAPPS.

Finally, even if Quine could bring an equal protection claim after entering into a settlement agreement that released all such claims, Quine would lack

5

standing to contest the exclusion of particular items from TIAPPS under the Equal Protection Clause. Quine is housed in a female institution and has access to all of the items that are denied to inmates housed in male institutions. Therefore, CDCR's policies do not inflict a concrete or particularized injury on Quine. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016). Because Quine lacks standing to raise an equal protection claim, we need not reach the parties' arguments regarding the appropriate standard of scrutiny for evaluating such claims.

The district court also erred in holding that CDCR breached the settlement agreement by not providing state-issued compression tops and binders to Identified Inmates at state expense. Compression tops and binders are not "property items available to CDCR inmates . . . that are designated as available to a specific gender only." Rather, the list of state-issued property and Authorized Personal Property Schedules (APPS) for male and female inmates do not include any compression tops or binders.[1] Therefore, the failure to provide compression tops and binders at state expense does not violate the settlement agreement.

---

[1] *See* Cal. Code Regs. tit. 15, § 3030(b); *Authorized Personal Property Schedule*, CDCR (Apr. 1, 2014), 15–16, 45–47. https://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/DOM/DOM%202018/APPS-Rev-4-1-14.pdf.

The record does not provide sufficient information to determine whether CDCR gives all Identified Inmates "access to property items available to CDCR inmates consistent with those inmates' custody and classification factors" as required by the settlement agreement, or whether CDCR limits Identified Inmates' access to such property based on criteria that is inconsistent with the settlement agreement. At oral argument, CDCR conceded that the evidence necessary to decide this issue was not in the record. Therefore, we vacate the district court's order that CDCR revise its policy to provide access to property at non-hub institutions, and remand for further evidentiary development.

We affirm the district court's conclusion that only medical or mental health staff may identify an individual as transgender or experiencing symptoms of gender dysphoria. The settlement agreement's statement that Identified Inmates must be "identified by medical or CDCR personnel" is reasonably susceptible to the interpretation that only CDCR mental health personnel can make such identification, the parties submitted conflicting extrinsic evidence on this point, and the court's conclusion that such an interpretation reflects the parties intent was supported by substantial evidence. *Winet*, 4 Cal. App. 4th at 1165–66.[2]

---

[2] Each party will bear its own costs on appeal.

**AFFIRMED in part, VACATED and REMANDED in part, and REVERSED in part**

*Quine v. Kernan*, Nos. 17-16148, 17-16212
Paez, J., concurring in part and dissenting in part.

I agree with the majority that Quine lacks standing to bring an equal

protection claim and that the record does not provide sufficient information to

determine whether CDCR is in compliance with the settlement agreement's access

requirement for inmates detained in non-hub facilities. I also agree with the

majority that the district court did not err when it determined that, pursuant to the

terms of the settlement agreement, only medical professionals and CDCR mental

health staff may identify transgender inmates or inmates experiencing symptoms of

gender dysphoria. Nonetheless, I dissent in part because I part ways with the

majority on two issues: first, whether the settlement agreement grants Quine the

right to challenge individual exclusions from the property list; and second, whether

the district court abused its discretion when it ordered CDCR to provide male

transgender inmates compression tops.

As we have repeatedly recognized, California's parol evidence rule is

unusually generous. It "permit[s] the introduction of extrinsic evidence to

demonstrate the existence of an ambiguity even when the language of a contract is

perfectly clear." *Wilson Arlington Co. v. Prudential Ins. Co. of Am.*, 912 F.2d 366,

370 (9th Cir. 1990). Extrinsic evidence is therefore permissible when offered to

show the meaning of a contested contractual term, so long as the term itself is

"reasonably susceptible" to the meaning advanced by the party introducing the extrinsic evidence. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968) (internal quotation marks and citation omitted). In short, extrinsic evidence is admissible to expose a latent ambiguity "even if a contract appears unambiguous on its face." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006) (internal quotation marks omitted).

The majority mistakenly conflates patent and latent ambiguity, even though the California Supreme Court has explicitly distinguished between the two. *See id.* at 393 (concluding that no triable issues of fact existed because the letter at issue "contained no ambiguity, patent *or* latent, in its termination provisions" (emphasis added)); *see also Alameda Cty. Flood Cent. v. Dep't of Water Res.*, 213 Cal. App. 4th 1163, 1180 (2013) ("'An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence.'" (quoting *Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354, 360–61 (2001))). The term "opportunity to comment" may appear unambiguous on its face, but the extrinsic evidence here reveals a latent ambiguity that the language of the settlement agreement is reasonably susceptible to.

As the district court recognized, counsel for Quine expressly asked CDCR at the settlement conference whether this specific provision granting Quine an

opportunity to comment on CDCR's property policy also included a "process in place for the parties to resolve any disputes with regard to items that are not being available based on safety and security concerns." Counsel for CDCR responded affirmatively and further represented to the court that if there were any disputes about the property policy, they would be brought before the court as part of the court's "continuing jurisdiction of execution." The parties therefore agreed and confirmed that the "opportunity to comment" provision of the settlement agreement included the opportunity for Quine to *dispute* the exclusion of certain items from the property policy prior to its finalization. This introduces latent ambiguity into the meaning of "opportunity to comment."

The structure of the settlement agreement lends further support for Quine's understanding of the "opportunity to comment" provision. The next provision of the agreement states that the district court "shall retain jurisdiction of this litigation while this Agreement's terms are being executed. Any disputes between the parties concerning this Agreement shall first be presented to Magistrate Judge Nandor J. Vadas . . . without prejudice to a party's right to seek formal relief from the Court." Read together—and in the context of CDCR counsel's representation at the settlement hearing—the agreement clearly contemplates that Quine can dispute the property policy in court. Critically, "opportunity to comment" is not so

rigid a term as to preclude Quine from "reasonably under[standing]," *Dore*, 39 Cal. 4th at 393, the term to include an opportunity to dispute.

Furthermore, "[b]ecause a trial court's review of extrinsic evidence is essentially an inquiry into the intent of the contracting parties, its conclusions based on such evidence must be accorded great weight." *In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 632 (9th Cir. 1984). When, as here, "the inquiry extends beyond the words of the contract and focuses on related facts . . . , the trial court's consideration of extrinsic evidence is entitled to great deference and its interpretation of the contract will not be reversed unless it is clearly erroneous." *Id.* The district court here made a finding of fact that the parties agreed at the settlement conference to include an opportunity to dispute the property policy in the settlement agreement's "opportunity to comment" provision. This finding, in turn, guided the district court's interpretation of the agreement. Because the district court's factual finding was not clearly erroneous, I would affirm the district court's well-reasoned conclusion that the agreement grants Quine the right to dispute the exclusion of items from the property policy.[1] *Cf. Mendler v.*

---

[1] I nonetheless join the majority opinion in concluding that Quine lacks standing to assert an equal protection claim, whether independently or arising from the "opportunity to comment" provision of the settlement agreement, because parties cannot contract for standing. *See D'Lil v. Best Western Encina Lodge &*

(continued...)

*Winterland Prod., Ltd.*, 207 F.3d 1119, 1121 (9th Cir. 2000) ("While we are wont to defer when a district court relies on extrinsic evidence in interpreting an ambiguous contract, the district court here made no findings of fact with regard to the copyright claim.").

Nor did the district court abuse its discretion when it ordered CDCR to provide compression tops to male transgender inmates. The settlement agreement mandates that CDCR must revise its policies to guarantee Identified Inmates "access to property items." This access, however, must be *equivalent*. CDCR would hardly comply with the terms of the agreement if it charged transgender inmates—but not their cisgender counterparts—a surcharge for items like makeup or aftershave. Accordingly, CDCR's revised policy provides that transgender inmates "shall be allowed to possess the *state-issued* clothing that corresponds to their gender identities in place of the state-issued clothing that corresponds to their assigned sex at birth at designated institutions." Cal. Code Regs. tit. 15 § 3030(c) (emphasis added).

---

[1](...continued)
*Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) ("As the Supreme Court has explained, 'the question of standing is not subject to waiver.'" (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)). In my view, the settlement agreement preserved Quine's ability to bring claims pertaining to the property policy, but it did not contemplate claims for which she lacked standing.

The majority reads the list of state-issued property too literally. A quick examination of state-issued clothing reveals that CDCR provides detained men and women equivalent items. Men receive three pairs of jeans and blue chambray shirts. *See id.* § 3030(b)(2). Women receive three pairs of slacks and blouses/t-shirts. *See id.* § 3030(b)(3). Men receive undershorts; women receive panties. *See id.* § 3030(b). Cisgender female inmates receive bras. The equivalent of bras for transgender male inmates are compression tops. Because the state already issues bras to female inmates (and requires them to wear them), equivalent access to state-issued property from the property list for transgender male inmates in female institutions reasonably means that compression tops must be state-issued as well. I would therefore affirm the district court's ruling on this issue.

In my view, the majority's narrow reading of the settlement agreement not only fails to accord the district court's order due deference, it denies Quine the full value of what she negotiated for.

For the foregoing reasons, I respectfully dissent in part from the majority's disposition.