[Civ. No. 23151.    First Dist., Div. Three.    Aug. 30, 1967.]

BURDELL FRANCESCHI et al., Plaintiffs and Respondents, v. O. N. KUNTZ et al., Defendants and Appellants.

Robert C. Dunn and Charles V. Moore for Defendants and Appellants.

Hill, Janssen, Corbett & Dunaway and Victor M. Corbett for Plaintiffs and Respondents.

BROWN (H. C.), J.—This is an appeal by defendants from a judgment which enjoined them from the use of a roadway and assessed damages against them in the sum of $2,500. Appellants contend that respondents by deed dated April 4, 1955, granted Western Studs, a logging firm, the right to use the roadway and that appellants' use was under the authorization of the ultimate successors in interest to Western Studs and therefore did not constitute a trespass.

The facts may be briefly stated: In a deed dated April 4, 1955, hereinafter referred to as Mather deed, A. W. Mather (now deceased) and Burdell P. Mather, his wife, (now Mrs. Franceschi) granted to Western Studs, a limited partnership, certain real property, timber and rights of way situated in the County of Humboldt, California. The deed, after describing the land specifically, excepted that portion lying northeasterly of a line parallel to and distant 50 feet southwesterly from the center line of an existing road known as Mather road. The grant included, however, all of the timber on the 50-foot strip of land retained by the Mathers. The deed also

granted a nonexclusive right of way for ingress and egress over an existing road known as Mather road. The deed provided relative to the use of easements and rights of way "*. . . The above rights of way are conveyed subject to the condition that the grantees their successors or assigns will bear their share of upkeep* [of said Mather road] *in proportion to their use thereof. . . .*" [Italics added.]

Following the grant to Western Studs, there were a number of successive transfers to various logging and lumber companies. The end result was that the Weyerhaeuser Company became the owner of the land, timber and access rights described in the original deed from Mr. and Mrs. Mather.

On September 15, 1960, Weyerhaeuser, as such owner, entered into a contract with the Far Western Lumber Corporation for the logging of timber. This agreement provided, among other things: "*Owner shall provide the following nonexclusive roads rights and facilities to be maintained by Operator unless otherwise specifically provided: existing logging roads, spurs, and landings on the Contract Area, and such of the existing access roads and access easements as Owner may have the right to permit Operator to use.*" [Italics added.]

The Far Western Lumber Corporation quitclaimed its rights in the September 15, 1960 agreement to the Fairhurst Lumber Company with the consent of Weyerhaeuser, and Fairhurst quitclaimed all of its rights to appellants, also with the consent of Weyerhaeuser.[1]

Mather Road is 3.3 miles long but only the easterly 1.5 miles was traversed by the appellants' logging trucks. The entire road was used for ingress and egress for automobiles

---

[1] "February 9, 1965 O. N. and Genevieve Kuntz 1266 Clam Beach Road Arcata, California Dear Mr. and Mrs. Kuntz: Reference is made to our letter dated August 1, 1962, copy attached, consenting to Fairhurst Lumber Company's assignment to you of timber cutting and other rights on our lands in Sections 21 and 22, T7N, R1E, Humboldt County, California. Through the chain of title from Mather to Western Studs to Far Western, etc. to you, there were several changes in title, and at times complicated changes. The net result was that Weyerhaeuser owned the land, timber and access rights originally granted by Mather to Western Studs. In turn, it granted certain timber cutting rights on these and other lands to, and permitted the exercise of its various access rights by, Far Western Lumber Corporation. Far Western's rights were assigned to Fairhurst Lumber Company with our consent. A portion of these rights were assigned by Fairhurst to you, again with our consent. The portion assigned to you related to the above described lands, and it was our intent to consent to the transfer to you of such of our access rights as were appurtenant to or available for convenient access to the said Sections 21 and 22. Very truly yours, WEYERHAEUSER COMPANY By E. F. Hencox, Division Vice President Timberland Division"

and other light automotive equipment of appellants' employees. Appellants used the roadway for its logging trips for less than one week when respondents instituted this action to enjoin the use by appellants and for damages for excess use. Appellants, after the suit was filed, ceased logging and filed a cross-complaint for damages against the respondents for damages for wrongful interference with their operations. Judgment was for the respondents enjoining appellants' use of the roadway and for $2,500 damages for trespass and against appellants on their cross-complaint.

The court in its memorandum of decision said: ". . . In the opinion of the Court, that is the issue: 'Does defendant [appellant] have a right to use the road in question?' His actual use of the road has been short lived. There has been no time within which he could have complied with whatever upkeep provisions might initially have attached to the use of the road. The court will, therefore, consider the matter of the first cause of action. Does the defendant [appellant] have a right to use the road here in question or is his use a trespass?

". . . [T]he right of way had been retained by Weyerhaeuser [a predecessor in interest] with the real property and did not pass by any of the subsequent documents to Fairhurst and hence did not pass to defendant [appellant]. Having no interest in the right of way acquired from Fairhurst, defendant's [appellant's] use would be a trespass and subject to an injunction."

The sole question, therefore, to be considered is the propriety of the use of Mather road by appellants in connection with their logging operation. The determination of this question depends upon the authority of Weyerhaeuser to assign the right to use or to consent to such use.

All rights of ownership, possession and use of the property and its access roads stem from and are governed by the original Mather deed dated April 4, 1955. In the numerous succeeding transfers, assignments and grants there were no additional limitations imposed or variances from the rights granted in the original deed. The record discloses that appellants have not exceeded those rights.

The language of the Mather deed expressly grants ". . . a nonexclusive right of way for ingress and egress over an existing road [Mather road] . . ." The only reservations in the deed were that the grant was a nonexclusive use and the grantees or their assigns were to pay for the upkeep in proportion to use. The terms "grantee" or "assigns" in the deed indicate that the grantors contemplated its assignment.

Further, there was no prohibition in the deed prohibiting the transfer or assignment of the described property with the timber rights and access roads.

The inferences to be drawn from the circumstances of the many transfers and assignments of the property support the conclusion that the language in the Mather deed permitted the use of Mather road and other access roads by subsequent grantees. The transactions here involved the sale of timber and logging operations. The grantees and assignees were logging companies. The timber to be logged was on property adjacent to Mather road. It was economical for appellants to use the road in its operation. Further, respondent (Mrs. Franceschi) herself testified that the reason the provision for upkeep of the roadway was placed in the deed was to insure the maintenance of the road and that if it were to be used for logging it would be strengthened for that purpose. If the respondents desired to limit or restrict the use of Mather road, they could have expressly provided for that limitation of use. This they did not do. "The transfer of a thing transfers also all its incidents *unless expressly excepted*; but the transfer of an incident to a thing does not transfer the thing itself." (Civ. Code, § 1084 [italics added].) ▇ A right of way for road purposes granted in broad terms means "a general right of way capable of use with the dominant tenement for all reasonable purposes."[2] (*Laux* v. *Freed*, 53 Cal.2d 512, 525 [2 Cal.Rptr. 265, 348 P.2d 873]; see also *C. F. Lott Land Co.* v. *Hegan*, 177 Cal. 169 [169 P. 1035]; *Fristoe* v. *Drapeau*, 35 Cal.2d 5, 9 [215 P.2d 729].)

▇ Prior to the time respondents instituted these proceedings, Weyerhaeuser was the owner of the land, timber and access rights described in the Mather deed. Weyerhaeuser's right to use the roads and access rights cannot be questioned. Weyerhaeuser contracted to allow Far Western to log the area and also agreed to provide all necessary access roads that it possessed under the Mather deed. Appellants, being the subsequent assignee of the Far Western-Weyerhaeuser agreement, commenced their logging and use of Mather road pursuant to the agreement and with the full consent of Weyerhaeuser.

The trial court did not consider the question of appellants' right to use the road as a logging road but only determined that appellants could not use it for any purpose.

Both parties agree that the right of way in question is

---

[2] "The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is layed is called the servient tenement." (Civ. Code, § 803.)

appurtenant to the real property owned by Weyerhaeuser (the dominant estate). Respondents contend that Weyerhaeuser could not transfer the right of way to appellants since this is an attempt to sever an appurtenant easement from the remaining property and renders the transfer ineffective. (See e.g., *Leggio* v. *Haggerty*, 231 Cal.App.2d 873 [42 Cal.Rptr. 400].) This is not the case before us since the use of the right of way (the servient tenement) was only to be operative in connection with the timber or the dominant estate. Weyerhaeuser did not attempt to transfer the right of way to a third party for a use not connected with the dominant estate. *Restatement of the Law of Property, section 453, at page 2914,* defines appurtenant easement as follows: "An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land."

We conclude, therefore, that Weyerhaeuser as owner could use the easement in any manner consistent with the original grant. (See generally 2 Witkin, Summary of Cal. Law (1960), p. 1015, et seq.) It had full authority to have its own employees conduct its logging operations and utilize all the access roads granted or it could contract with other persons or firms to do the logging and use the access roads, as it did here. Appellants succeeded to Weyerhaeuser's rights by contract and were authorized users of the roadway in question. The trial court erred in holding that their use was a trespass and subject to injunction.

█ Respondents also contend that the $2,500 award should be upheld as damages for the failure to comply with the upkeep provisions as set forth in the Mather deed. This is an erroneous contention since the trial court never reached this issue (the court in the memorandum decision stated that respondents had no time in which to maintain the road). Although evidence was produced that appellants' logging trucks caused damage to the road, respondents did not request appellants to maintain the road and there was no evidence of a refusal to bear the proportionate upkeep.

The judgment of $2,500 damages cannot be justified as damages for trespass as appellants were authorized to use the roadway. Also, the judgment cannot be sustained as repair damages or for excessive use as there was no finding by the court on the issue. (See Code Civ. Proc., § 632.)

The judgment is reversed.

Draper, P. J., and Salsman, J., concurred.