Filed 2/21/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ARNOLD J. SCHMIDT, as Trustee, etc., et al., <br><br>         Plaintiffs and Appellants, <br><br>         v. <br><br> BANK OF AMERICA, N.A., et al., <br><br>         Defendants and Respondents. | D062532 <br><br><br> (Super. Ct. No. 37-2009-00068437-CU-OR-EC) |

APPEAL from judgments of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed.


Smaha Law Group, John L. Smaha, Gregory J. Borman; Niddrie Fish & Addams and David A. Niddrie for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, LLP, Paul S. Malingagio and Kyndra J. Casper for Defendant and Respondent Bank of America, N.A.

Mulvaney, Barry, Beatty, Linn & Mayers, LLP, Robert A. Linn and Stacy H. Rubin for Defendant and Respondent Aragon Homeowners Association.

Plaintiffs Arnold J. Schmidt and Valerie A. Schmidt (together, the Schmidts), as cotrustees of the Arnold and Valerie Schmidt 2005 Revocable Trust, appeal judgments in favor of defendants Bank of America, N.A. (Bank of America) and Aragon Homeowners Association (Aragon HOA) after the court granted defendants' motions for summary judgment on the Schmidts' complaint for trespass, nuisance, and declaratory and injunctive relief. The Schmidts contend that the court erred in finding no triable issues of material fact regarding (1) the existence and scope of a roadway easement over the Schmidts' property; (2) the burden on the Schmidts' property created by Bank of America and the Aragon HOA's use of the roadway easement; (3) Bank of America's ownership of and control over the roadway easement; and (4) Bank of America's immunity as a lender under Civil Code[1] section 3434. The Schmidts further contend that Bank of America has not established its immunity as an individual condominium owner under former section 1365.9.[2] Bank of America and the Aragon HOA counter that no triable issues of material fact exist on the Schmidts' claims, and the court properly granted summary judgment. We conclude that the trial court's interpretation of the easement was erroneous and that triable issues of material fact preclude summary judgment as to both Bank of America and the Aragon HOA. We therefore reverse the judgments.

---

[1]     Statutory references are to the Civil Code unless otherwise noted.

[2]     Effective January 1, 2014, former section 1365.9 was repealed and recodified without substantive change as section 5805. (Stats. 2012, ch. 180, §§ 1-2.) For clarity, we will continue to refer to former section 1365.9 in this opinion.

2

FACTUAL AND PROCEDURAL BACKGROUND

The Schmidts own a parcel of land along El Cajon Boulevard in La Mesa, California (the Schmidt parcel). On an adjacent parcel directly to the east (the Aragon parcel), a property developer constructed a condominium project called Aragon. That property developer, Barratt American Incorporated (Barratt), planned to develop the Aragon project in three phases, corresponding to three condominium buildings, all on the Aragon parcel abutting the Schmidt parcel. The three condominium buildings would share certain common areas and amenities and be governed by a single homeowners' association, the Aragon HOA. Barratt financed the Aragon project through a revolving credit agreement with Bank of America, as administrative agent for a group of lenders.

The Schmidt and Aragon parcels were once under the common ownership of Rose Miller Parks. In 1941, Parks conveyed the portion of her property that would become the Schmidt parcel to Edith Ford. Parks reserved for herself, however, an easement over the portion of the conveyed property adjacent to the property she retained. The portion of Parks's grant deed to Ford that recites the reserved easement reads as follows: "RESERVING to the grantor, her successors, assigns and/or heirs, the right of ingress and egress for public road purposes over, along and across the Easterly 40 feet thereof."

Four years later, Parks sold her retained parcel, which would become the Aragon parcel, to Clemons Smith. Parks's grant to Smith included the following language: "ALSO an easement for public road purposes, and incidental purposes, over the Easterly 40 feet of the following described land . . . ." This language purported to describe the reserved easement, though in different terms than Parks's earlier grant deed to Ford.

3

The Aragon parcel was conveyed several times through the years. Each subsequent grant recited the reserved easement, in the language of Parks's grant deed to Smith, until 2000. In that year, the then-owner of the Aragon parcel, Margaret Churchman, conveyed the Aragon parcel to her trust without reciting the reserved easement. Two years later, the trustees of Churchman's trust executed a deed that attempted to correct this omission. Two years after that, Churchman's trust deeded the Aragon parcel to Barratt. The grant to Barratt recited the reserved easement, again in the language of Parks's grant deed to Smith.[3]

Barratt began construction on the Aragon project and, within four years, had completed two of the three planned condominium buildings. As pertinent to this appeal, Barratt constructed certain features related to the Aragon project on, under, and around the reserved easement area on the Schmidt parcel. Barratt graded and paved the easement area for a private roadway, Troy Lane, that facilitates access from El Cajon Boulevard to a parking garage for the Aragon project. At the end of the roadway, on the Schmidt parcel, Barratt erected a locked gate. The gate prevents traffic from using Troy Lane as a throughway between El Cajon Boulevard (to the north) and Troy Terrace (to the south). Underneath Troy Lane, Barratt placed or improved certain subsurface infrastructure for the Aragon project, including sewer pipes, storm drains, oil and sand separators, and construction nails designed to hold steep dirt slopes in place.

---

[3] During Churchman's ownership of the Aragon parcel, she narrowed the 40-foot easement by 13 feet to create a 27-foot easement. Her trust's eventual grant to Barratt recites this narrowing as well.

4

After phase 1 of the Aragon project was completed, Barratt deeded the Aragon parcel to the Aragon HOA, reserving the phase 1 "building envelope" that comprised condominiums to be sold to individual owners and the phase 2 and phase 3 "modules" that would encompass those future buildings. Similarly, after phase 2 was completed, Barratt deeded the phase 2 "module" to the Aragon HOA, again reserving the phase 2 "building envelope" for sale to individual condominium owners. The easement reserved by Parks is not recited in either deed from Barratt to the Aragon HOA.

The operative declaration of covenants, conditions, and restrictions (CC&R's) for the Aragon project tasks the Aragon HOA with certain responsibilities for governing and maintaining the project. As relevant here, the CC&R's provide that the Aragon HOA "shall maintain the Offsite Maintenance Areas . . . in a good condition of maintenance and repair [in] accordance with all City requirements." The CC&R's define the Offsite Maintenance Areas to include the easement over the Schmidt parcel that contains the Aragon roadway, the traffic gate, and the subterranean infrastructure improvements.

Barratt did not complete phase 3 of the Aragon project. After deeding the phase 2 module to the Aragon HOA, Barratt defaulted on its credit agreement with Bank of America. Bank of America then began foreclosure proceedings on the deed of trust that Barratt had tendered as security for the credit agreement. Although the circumstances are unclear, the record reflects that Bank of America took title to various portions of the Aragon project in two trustee's sales. The first trustee's sale, approximately nine months after Barratt's default, resulted in Bank of America's acquisition of 16 individual condominium units in phases 1 and 2 that were completed (but not yet sold) and 10

5

planned condominium units in the uncompleted phase 3.  The second trustee's sale, almost two years later, resulted in Bank of America's acquisition of the bulk of the Aragon parcel that had not yet been sold to individual condominium owners or deeded to the Aragon HOA.  The deed obtained by Bank of America in connection with the second trustee's sale grants the easement reserved by Parks over the Schmidt parcel to Bank of America.

After Barratt completed construction of phases 1 and 2, along with the improvements to the easement area, the Schmidts filed this lawsuit.  The Schmidts' initial complaint alleged causes of action for trespass, nuisance, and injunctive and declaratory relief against five named defendants, including Bank of America, and 20 fictitiously named Doe defendants.  The Schmidts later substituted the Aragon HOA for one of the Doe defendants.  Bank of America and the Aragon HOA are the only defendants that are parties to this appeal.

The Schmidts' complaint alleges that the Schmidt parcel "is subject to certain easement[] rights and restrictions" and that "the construction of [the Aragon project] has violated the Easement Rights and Restrictions, and has trespassed upon and/or created and maintained nuisances affecting [the Schmidt parcel.]"  The trespasses and nuisances alleged by the Schmidts include:  (1) improperly installed oil and sand separators, storm drains, fire lanes, fire gates, and tie backs in and along the easement; (2) an improperly constructed and maintained driveway apron and a similarly improper garage entryway along the easement; and (3) the lack of a road maintenance agreement for the roadway on the easement.  The Schmidts sought damages for loss of reasonable use and enjoyment of

6

their property, diminished market value of the property, and other compensatory and punitive damages. The Schmidts also demanded that the structures and improvements at issue be removed. Bank of America and the Aragon HOA filed answers generally denying the Schmidts' allegations and alleging various affirmative defenses.

After approximately 18 months of litigation, Bank of America filed a motion for summary judgment or, in the alternative, summary adjudication on the following grounds: (1) Bank of America does not own the structures and improvements at issue; (2) Bank of America does not maintain or control the structures and improvements at issue; (3) Bank of America, as an owner of individual condominium units, cannot be held liable for tort actions under former section 1365.9; (4) the structures and improvements at issue do not violate the reserved easement; and (5) Bank of America merely acted as a lender to Barratt on the Aragon project and cannot be held liable under section 3434.[4] The Schmidts opposed, arguing as follows: (1) Bank of America's ownership interests extend beyond individual condominiums; (2) Bank of America's ownership and control of the structures and improvements at issue is unclear because of various security interests obtained by Bank of America over Barratt property; (3) Bank of America did not satisfy the requirements of former section 1365.9; (4) the structures and improvements at issue do violate the reserved easement; and (5) Bank of America did not establish it acted as a mere lender.

---

[4]     Bank of America's motion relied on the language of the 1945 grant deed and does not discuss Parks's 1941 reservation. The Schmidts' opposition raised the differences in language between the two descriptions of the reserved easement.

7

The Aragon HOA filed a motion for summary judgment or, in the alternative, summary adjudication on the ground that the structures and improvements at issue do not violate Parks's 1941 reserved easement. The Schmidts opposed, arguing that the reserved easement did not allow the structures and improvements as they were constructed.

The court granted summary judgment in favor of Bank of America and the Aragon HOA on all of the grounds asserted, with the exception of Bank of America's defense based on ownership of an individual condominium under former section 1365.9, which the court did not address. The court entered separate judgments accordingly.

DISCUSSION

I

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.] When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot

reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*).).)[5]

If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) "The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record and the determination of the trial court de novo." (*Kahn*, *supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

" 'Examining evidence in light of summary judgment standards is far different from applying the substantial evidence test that often governs on appeal. . . . Thus even though it may appear that a trial court took a "reasonable" view of the evidence, a

---

5      Contrary to the Schmidts' suggestion, "summary judgment law in this state [does not] any longer require a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).)

9

summary judgment cannot properly be affirmed unless a contrary view would be unreasonable as a matter of law in the circumstances presented.' " (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877; see *Aguilar*, *supra*, 25 Cal.4th at p. 856 ["[T]he court may not weigh the plaintiffs' evidence or inferences against the defendants[] as though it were sitting as the trier of fact."].)

We are not bound by the issues actually decided by the trial court. "The appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court, providing the facts are undisputed. [Citations.] Thus we must affirm so long as any of the grounds urged by [defendants], either here or in the trial court, entitle [them] to summary judgment." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1595.)

## II

Bank of America and the Aragon HOA contend, here as in the trial court, that the scope of the reserved easement covers the structures and improvements that are the subject of the Schmidts' complaint and thus constitutes a complete defense to the Schmidts' claims. They argue that the phrase "for public road purposes" created a public right-of-way over the reserved easement. Relying primarily on *Bello v. ABA Energy Corp.* (2004) 121 Cal.App.4th 301 (*Bello*), Bank of America and the Aragon HOA contend that the reserved easement, as a public right-of-way, may be used for any infrastructure that accompanies normal development, including the various structures and improvements that the Schmidts allege are at issue. Bank of America and the Aragon

10

HOA thus argue that no triable issue of fact exists as to the Schmidts' causes of action because the scope of the reserved easement, if interpreted as a public right-of-way, covers all of the structures and improvements at issue as a matter of law.

The Schmidts argue that the grant created only a "right of ingress and egress" that entitles the dominant Aragon parcel to use only the surface of the easement.[6] Relying primarily on *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697 (*Scruby*), the

---

[6] The Schmidts' opening brief asserts that Churchman's omission of the reserved easement from her grant of the Aragon parcel to her trust prevents Bank of America and the Aragon HOA, as successors-in-interest to the trust, from claiming rights under the easement. Because the Schmidts fail to offer any legal authority for this proposition, we may treat the argument as waived. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].) However, even if the Schmidts had not waived the argument, we would find it unavailing. We conclude that the easement is appurtenant and passed to Churchman's trust with her grant of the Aragon parcel regardless of whether it was specifically recited in Churchman's grant. "Easements are presumed appurtenant unless there is clear evidence to the contrary. . . . Although a grantor *may* reserve an interest in property to a stranger to grantor's title[,] that intent must be clearly shown . . . ." (*Cushman v. Davis* (1978) 80 Cal.App.3d 731, 735, italics added, citations omitted.) The Schmidts have made no showing that would rebut the presumption that the reserved easement is appurtenant. (See *ibid.*) Moreover, as a "right of ingress and egress for public road purposes over, along and across" the Schmidt parcel, the reserved easement here benefits the Aragon parcel and is thus appurtenant to it. (See *St. Louis v. DeBon* (1962) 204 Cal.App.2d 464, 465 [right of ingress and egress held to be appurtenant]; see § 662 ["A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way . . . across the land of another."].) Thus, because a "transfer of real property passes all easements attached thereto," the reserved easement passed automatically to Churchman's trust when she granted the Aragon parcel to the trust. (§ 1104; see § 1084 ["The transfer of a thing transfers also all its incidents, unless expressly excepted . . . ."].) In light of our conclusion, we need not address whether the Schmidts' allegation in their complaint that their land "is subject to certain easement[] rights and restrictions" constitutes a judicial admission regarding the continued existence of the reserved easement, as Bank of America and the Aragon HOA contend.

Schmidts argue that the reserved easement here is akin to a private roadway easement, which they contend may not be used for any non-roadway purpose. The Schmidts disagree that the phrase "for public road purposes" created a public right-of-way because, among other reasons, the reserved easement benefits only the Aragon parcel and not the public at large. Thus, the Schmidts contend, the opinion in *Bello* and similar public right-of-way cases are unpersuasive in assessing the scope of the reserved easement here. The Schmidts argue that summary judgment is inappropriate because disputed issues of material fact remain regarding whether the structures at issue fall within the scope of the reserved easement as properly interpreted.

A

We begin by interpreting the easement at issue. "An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership." (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261.) "It is fundamental that the language of a grant of an easement determines the scope of the easement." (*County of Sacramento v. Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 313 (*County of Sacramento*).)

"Grants are to be interpreted in like manner with contracts in general . . . ." (§ 1066.) "The interpretation of a written instrument, even though it involves what may properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 (*Parsons*).) "Accordingly, '[a]n appellate court is not bound

12

by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence . . . .' " (*Ibid.*)

"The task of the reviewing court has been described as placing itself in the position of the contracting parties in order to ascertain their intent at the time of the grant. [Citation.] If the intent of the parties can be derived from the plain meaning of the words used in the deed, the court need not, and should not, resort to technical rules of construction." (*Machado v. Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347, 352-353 (*Machado*).) Similarly, "[i]f the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.)

Here, Parks's 1941 grant provides the following: "RESERVING to the grantor, her successors, assigns and/or heirs, the right of ingress and egress for public road purposes over, along and across the Easterly 40 feet thereof." The meaning of Parks's grant, at least as relevant to the determination of the issues presented in this appeal, is clear and unambiguous. The grant is limited to a "right of ingress and egress . . . over, along and across" a portion of the Schmidt parcel. The phrase "for public road purposes" reflects the impetus for the reservation and the reason for the right of ingress and egress. It is a qualification of, and limitation on, the right of ingress and egress reserved in the grant. It does not expand the right to include activities other than ingress and egress.

Our interpretation is supported by the usage of the phrase "right of ingress and egress," which also sheds light on the inclusion of the words "for public road purposes" in

the grant. The phrase "right of ingress and egress" has been used to describe one of the easements that a landowner has over a public street that his land abuts. "Every lot fronting upon a street has, as appurtenances thereto, certain private easements in the street, in front of and adjacent to the lot . . . ." (*Williams v. Los Angeles Railway Co.* (1907) 150 Cal. 592, 594.) "These private easements are, [first,] [t]he right of ingress and egress to and from the lot over and by means of the adjacent portion of the street . . . ." (*Ibid.*, citations omitted.) Just as an abutting landowner has "[t]he right of ingress and egress to and from [his] lot over and by means of the adjacent portion of the street" (*ibid.*), Parks's reservation established the right of ingress and egress to and from the reserved (Aragon) parcel over and by means of the specified portion of the Schmidt parcel "for public road purposes," that is, in order to reach a public road.[7]

We therefore disagree with the contention of Bank of America and the Aragon HOA that the phrase "for public road purposes" created a public right-of-way over the reserved easement, and we conclude that the trial court erred in so finding.[8] "Long ago

---

[7] In light of our interpretation of Parks's 1941 grant based on California law, we need not address the Schmidts' out-of-state authorities.

[8] We also do not agree with Bank of America that the trial court's interpretation of the reserved easement is entitled to any deference. Where, as here, the trial court's interpretation is not based on a credibility assessment of conflicting extrinsic evidence, we independently construe the meaning of the grant deed. (*Parsons*, *supra*, 62 Cal.2d at p. 866 & fn. 2; see *Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 349 ["The interpretation of an easement, which does not depend upon conflicting extrinsic evidence, is a question of law."].) We therefore need not consider whether summary judgment would be proper in light of allegedly conflicting extrinsic evidence. (See *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1500 [where extrinsic evidence

our Supreme Court made clear the difference between public and private rights of way: 'Public ways, as applied to ways by land, are usually termed "highways" or "public roads," and are such ways as every citizen has a right to use. [¶] A private way relates to that class of easements in which a particular person, or particular description or class of persons, have an interest or right as distinguished from the general public.' (*Kripp v. Curtis* (1886) 71 Cal. 62, 64, citation omitted.)" (*County of Sacramento*, *supra*, 193 Cal.App.3d at p. 313 [holding that public utility easements are private easements].) "A private easement ordinarily vests those use rights in the owner of a particular parcel of neighboring property, the 'dominant tenement.' [Citation.] Unlike a private easement, the use rights of a public right-of-way are vested equally in each and every member of the public. [Citation.] The city or county government ordinarily administers use of the right-of-way." (*Bello*, *supra*, 121 Cal.App.4th at p. 308.) Here, the reserved easement exists purely between private parties. There is no evidence that the public at large has any rights to the reserved easement or that the use of the easement is regulated by any governmental entity as a public right-of-way. The mere inclusion of the phrase "for public road purposes" does not transform an otherwise private easement into a public right-of-way.[9]

---

considered, interpretation "becomes a question of fact and not to be resolved on summary judgment"].)

[9]     The requirement that we interpret a reserved easement in favor of its grantor does not alter this analysis. (See § 1069 ["A grant is to be interpreted in favor of the grantee, except that a reservation in any grant . . . is to be interpreted in favor of the grantor."].)

15

Bank of America and the Aragon HOA argue that the reserved easement should be interpreted as a public right-of-way because, as Bank of America asserts, "the broad Easement grant does not include any restrictions to the 'public road purposes' for which it was granted." The language of the easement does not support their argument. Parks's 1941 grant reserves "the right of ingress and egress for public road purposes over, along and across" a portion of the Schmidt parcel. The phrase "for public road purposes" is qualified both by the right granted ("ingress and egress") and by its application to the Schmidt parcel ("over, along and across"). The grant here was not simply "for public road purposes"; that phrase must be read in context with the remainder of the grant language.

*Franceschi v. Kuntz* (1967) 253 Cal.App.2d 1041, relied on by Bank of America and the Aragon HOA, does not support their argument. The *Franceschi* opinion considers whether a right of ingress and egress over a private road may be assigned for use by another. (*Id.* at p. 1044.) The court held that the terms of the grant expressly contemplated assignment of the right and that there were otherwise no limitations on such assignment. (*Id.* at p. 1046.) The court did not consider whether a private easement for ingress and egress may be interpreted as a public right-of-way, nor did the court consider whether any activities other than ingress and egress were permitted on such an easement. The court's statement that "[a] right of way for road purposes granted in broad terms means 'a general right of way capable of use in connection with the dominant tenement

Such a rule of construction cannot be used to alter the clear and unambiguous meaning of the reserved easement. (See *Machado*, *supra*, 233 Cal.App.3d at pp. 352-353.)

16

for all reasonable purposes[,]' " concerns the nature and extent of the traffic using the private right-of-way, not whether a private right-of-way may be used for purposes other than ingress and egress.  (*Id.* at p. 1045; see *Laux v. Freed* (1960) 53 Cal.2d 512, 525 [similar language, considering whether a private right-of-way over servient tenement may be traversed by individuals intending to hunt commercially on the dominant tenement].)

The other authorities cited by Bank of America and the Aragon HOA are similarly unavailing.  In *Fristoe v. Drapeau* (1950) 35 Cal.2d 5, 8 (*Fristoe*), the Supreme Court considered whether a private right-of-way could be used only for agricultural traffic or also "as a means of ingress and egress to and from a residence."  Uses other than ingress and egress were not under consideration.  (*Ibid.*)  In *C.F. Lott Land Co. v. Hegan* (1917) 177 Cal. 169, 173 (*C.F. Lott*), the Supreme Court considered an easement allowing transportation of water in a ditch across a subservient tenement.  The question on appeal was whether the capacity of the ditch could be increased to transport more water than had previously been transported in the ditch.  (*Ibid.*)  None of the cases cited by Bank of America or the Aragon HOA provide support for their contention that the private right of ingress and egress recited in the reserved easement here should be interpreted as a public right-of-way.[10]

---

[10]     These authorities also do not substantiate Bank of America and the Aragon HOA's alternative argument that, even if a literal reading of the reservation would not cover all of the structures and improvements at issue, the scope of the reserved easement may be expanded to cover them because the Aragon parcel's "needs" have increased.  In *Fristoe*, the easement at issue was implied, rather than express, and the court found that the expanded use of the private right-of-way was "within the reasonable contemplation of the parties at the time of the conveyance."  (*Fristoe*, *supra*, 35 Cal.2d at p. 10.)  In *C.F. Lott*,

17

Bank of America and the Aragon HOA further contend that certain extrinsic evidence supports their interpretation of the reserved easement as a public right-of-way. Even though we have determined that the reserved easement is unambiguous, we may examine extrinsic evidence to consider whether it aids in interpretation. " '[E]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.' " (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 (*Dore*).)

Bank of America and the Aragon HOA argue that Parks's 1945 grant deed, in which she described the reserved easement as "an easement for public road purposes, and incidental purposes," supports their interpretation of the easement. Bank of America and the Aragon HOA argue that the phrase "and incidental purposes" means that the reserved easement should be interpreted broadly and encompass any use incidental to a public road. We disagree. "Incidental purposes" are necessarily dependent and subordinate to the main purpose of the easement. (See Black's Law Dict. (9th ed. 2009) p. 830, col. 1 ["incident" defined as "[a] dependent, subordinate, or consequential part (of something else)"].) Such language does not qualitatively expand the easement grant here, which already includes all of its incidents. (See § 1084 ["The transfer of a thing transfers also all its incidents, unless expressly excepted . . . ."].) To the extent that Bank of America

---

the use contemplated by the dominant tenement was within the literal scope of the grant at issue. (*C.F. Lott*, *supra*, 177 Cal. at p. 173 ["the grant contemplates the right to transport over the lands such water as may be necessary for the use of unnumbered lot 5"].) We consider the literal scope of the reserved easement in the next section, *post*.

and the Aragon HOA argue that the reserved easement should be interpreted, in light of Parks's 1945 grant deed, as retaining an easement for all purposes that a governmental entity might use a public road, we find that argument unpersuasive. The language of the reserved easement is not reasonably susceptible to such an interpretation even considering Parks's 1945 grant deed. (See *Dore*, *supra*, 39 Cal.4th at p. 393 [" 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over.' "]; see also *Scruby*, *supra*, 37 Cal.App.4th at p. 705 [" '[I]n determining the scope of an easement, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible.' "].) We therefore decline to adopt the interpretation offered by Bank of America and the Aragon HOA.

B

We next consider the relationship between the scope of the reserved easement and the structures and improvements at issue. "Whether a particular use of an easement by either the servient or dominant owner unreasonably interferes with the rights of the other owner is a question of fact." (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 350 (*Red Mountain*); see *Smith v. Worn* (1892) 93 Cal. 206, 214.) The question presented here is whether, in light of our interpretation of the reserved easement, any triable issue of fact exists regarding whether the structures and improvements constructed by Barratt on the Schmidt parcel are within the scope of the reserved easement.

19

Bank of America and the Aragon HOA contend that no triable issues of fact exist because all of the structures and improvements at issue would be within the scope of an easement for public right-of-way. However, because we conclude that the easement reserved by Parks confers a private "right of ingress and egress," the authorities cited by Bank of America and the Aragon HOA on the scope of easements for public rights-of-way do not support their position that no triable issue of fact exists here.

The interpretation of public rights-of-way departs significantly from the traditional common law principles that govern private easements. As the court in *Bello* explained:

> "The late 19th century saw a dramatic change in the judicially recognized scope of public rights-of-way in California. Before the widespread adoption of railroads, electricity, and the telephone, the term 'right of way' was given its literal meaning -- a public right to construct, maintain, and use a road over private land. Any other use required the landowner's consent. [Citations.] Shortly before the turn of the century, however, the Supreme Court recognized that urbanization was placing a much greater demand on public resources than could be accommodated by this literal view of public rights." (*Bello*, *supra*, 121 Cal.App.4th at p. 308.)

During this period of change, our Supreme Court approved of the principle that " '[t]he establishment of a public highway practically divests the owner of a fee to the land upon which it is laid out . . . .' " (*Montgomery v. Santa Ana Westminster Railway Co.* (1894) 104 Cal. 186, 193, quoting *Paquet v. Mt. Tabor St. R. Co.* (Ore. 1889) 22 P. 906, 907.) By contrast, the interpretation of easements held by private parties has not undergone the dramatic changes seen in public right-of-way cases.

Bank of America and the Aragon HOA have provided no grounds for the application of the public right-of-way cases where, as here, a public resource is not at

20

issue. Rather, a private party reserved the easement under consideration here, and it continues to benefit private, rather than public, interests. (See *County of Sacramento*, *supra*, 193 Cal.App.3d at p. 313; see also *Bello*, *supra*, 121 Cal.App.4th at p. 308.) Contrary to the Aragon HOA's suggestion, the fact that the public may use the easement to gain access to the Aragon project does not create a "public benefit" or create a public right-of-way. Just like any private driveway, the easement is used only for traffic to and from the Aragon project. No broader transportation purpose is served by the easement that would benefit the public at large.

In the private context, "[t]he conveyance of an easement limited to roadway use grants a right of ingress and egress and a right of unobstructed passage to the holder of the easement. A roadway easement does not include the right to use the easement for any other purpose." (*Scruby*, *supra*, 37 Cal.App.4th at p. 703.) "The owner of a dominant estate may do that which is reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use. [Citation.] But the easement may not be substantially altered without the consent of the owner of the servient estate." (*Id.* at pp. 706-707.)[11]

---

[11] Bank of America and the Aragon HOA contend that the Schmidts have waived their right to rely on the *Scruby* opinion on appeal because they did not cite *Scruby* in their briefing in the trial court. This contention has no merit. Where an appellant has not waived his right to argue an issue on appeal, he is free to cite new authority in support of that issue. (See *Giraldo v. California Dept. of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251 ["We are aware of no prohibition against citation of new *authority* in support of an *issue* that was in fact raised below . . . ."].) The efforts by Bank of America and the Aragon HOA to distinguish *Scruby* factually are likewise unpersuasive

21

The exact nature and extent of the structures and improvements constructed by Barratt on the Schmidt parcel are unclear from the record. As the parties moving for summary judgment on the grounds that the reserved easement covered these structures and improvements, Bank of America and the Aragon HOA were required to articulate their factual contentions regarding the nature and extent of these structures and improvements in order to allow an assessment of their relationship to the reserved easement. It appears that Bank of America and the Aragon HOA did not do so, which would provide independent grounds for denying their motions. Notwithstanding that deficiency, it appears that the structures and improvements constructed by Barratt include at least the following: (1) grading and pavement of the easement area on the Schmidt parcel for a private roadway, Troy Lane; (2) a locked gate at the end of Troy Lane, on the Schmidt parcel, preventing access from Troy Lane southward to Troy Terrace; and (3) various subterranean infrastructure elements for the Aragon project, including sewer pipes, storm drains, oil and sand separators, and construction nails designed to hold steep dirt slopes in place.[12]

---

given the propositions for which the Schmidts rely on *Scruby* and the procedural posture of this appeal.

[12] Bank of America and the Aragon HOA contend that subterranean improvements similar to those constructed by Barratt existed prior to Barratt's work, but they do not explain how the presence of such improvements entitles them to summary judgment on Schmidt's complaint. For example, Bank of America and the Aragon HOA do not describe the nature and extent of these prior improvements, by whom and under what circumstances they were placed, how they relate to any structures and improvements constructed by Barratt, and what legal effect the fact of these prior improvements might have on the Schmidts' claims.

In light of our construction of the language of the reserved easement, we conclude that Bank of America and the Aragon HOA have not met their burden of showing that no triable issues of material fact exist regarding whether these structures and improvements fall within the scope of the reserved easement. Their showing relies on the interpretation of the reserved easement as a public right-of-way, which we reject.[13] Whether and to what extent these structures and improvements are consistent with "the right of ingress and egress for public road purposes over, along and across" a portion of the Schmidt parcel; whether they are "reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use" (*Scruby*, *supra*, 37 Cal.App.4th at p. 707); or whether the easement was "substantially altered" by Barratt (*ibid.*) are material questions of fact that cannot be answered as a matter of law on the current record. (See *Red Mountain*, *supra*, 143 Cal.App.4th at p. 350.)

## III

Bank of America contends, in the alternative, that summary judgment was properly granted because Bank of America does not own, control, or maintain the structures and improvements that the Schmidts allege violate the reserved easement. Bank of America claims that the trustee's deeds in the record show that it acquired only

---

[13]    Bank of America criticizes the Schmidts for relying on discovery responses that are allegedly not part of the summary judgment record to establish the extent of the harm to their property as a result of the structures and improvements at issue. Because we conclude that Bank of America and the Aragon HOA have not demonstrated a prima facie entitlement to summary judgment (see *Aguilar*, *supra*, 25 Cal.4th at p. 850), we need not consider these discovery responses and whether they may be properly relied upon here.

certain real property on the Aragon parcel and not any of the structures and improvements that exist in, under, or along the easement area. Bank of America further argues that it does not have a right to the easement itself because, as an easement appurtenant to the Aragon parcel, that right passed automatically to the Aragon HOA when Barratt deeded certain portions of the Aragon parcel to the HOA before Bank of America's foreclosure and subsequent trustee's sale.

The Schmidts counter that Bank of America has not offered any legal analysis that would justify summary judgment in its favor based on these factual assertions. The Schmidts disagree with Bank of America's interpretation of the trustee's deeds and offer evidence that Bank of America took a security interest in various categories of personal property related to the Aragon project as collateral for its credit agreement with Barratt. The Schmidts contend that Bank of America holds or held a security interest in the easement and the structures and improvements thereon, and that triable issues of material fact remain regarding Bank of America's interest in the Aragon project.

We examine Bank of America's assertions according to the applicable standards of review. As a defendant moving for summary judgment, Bank of America "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) Bank of America "must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or [it] must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn*,

24

*supra*, 31 Cal.4th at p. 1003.)  If Bank of America does not meet this initial burden, "it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied." (*San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1534.)

A

As to Bank of America's claim that it does not own the structures and improvements at issue, we conclude that Bank of America has not met its initial burden. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850.)  Bank of America offers the trustee's deeds reciting Bank of America's interest in real property related to the Aragon parcel and a declaration from a Bank of America employee summarizing one of those deeds.  In its briefing, Bank of America refers generally to the effect of the trustee's deeds, but it does not parse their language or explain the relationship between them.  At oral argument, however, Bank of America walked through the deeds and contended that specific language excludes the structures and improvements at issue from Bank of America's ownership.  It was inappropriate for Bank of America to offer detailed analysis of the trustee's deeds for the first time at oral argument.  (See *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977, fn. 12.)  Nonetheless, even considering the merits of Bank of America's contention, we disagree that the trustee's deeds establish a prima facie case that Bank of America does not own the structures and improvements at issue.

With the first trustee's deed, Bank of America obtained ownership of certain completed condominium units in phases 1 and 2 of the Aragon project, as well as several proposed condominium units in the uncompleted phase 3.  With the second trustee's deed,

25

Bank of America obtained ownership of the entire Aragon parcel, including Parks's reserved easement, with the exception of any property that had already been deeded to the Aragon HOA or individual condominium owners. To the extent reflected in the record, the deeds conveying the excepted property (including the deeds to the Aragon HOA) do not recite the structures and improvements at issue, and Bank of America has not offered any evidence that the structures and improvements were included in the property that was conveyed prior to Bank of America's foreclosures.[14] In fact, as noted above, the second trustee's deed to Bank of America expressly recites the reserved easement as part of the conveyance. Thus, neither the trustee's deeds themselves, nor any of the excepted deeds, establish that the structures and improvements are not owned at least in part by Bank of America. Given our conclusion, we need not address the Schmidts' contentions regarding Bank of America's alleged continuing security interest in the structures and improvements and Bank of America's rebuttal thereto.[15]

---

[14] To the extent that Bank of America argues that exclusive ownership of the easement, and thus the structures and improvements, was conveyed to the Aragon HOA even in the absence of an express grant, we address and reject that argument in part III.C., *post*. Further, to the extent that Bank of America argues that the Aragon HOA CC&R's establish that the Aragon HOA exclusively owns the structures and improvements at issue, we are unpersuaded. The CC&R's define the "Association Property" owned by the Aragon HOA as "all real property owned, from time-to-time, in fee title by" the Aragon HOA and restate a portion of the legal descriptions from the Aragon HOA deeds. By contrast, the CC&R's describe the easement area encompassing the structures and improvements at issue as an "Offsite Maintenance Area[]" that is "outside the boundaries of the Project."

[15] Moreover, we note that Bank of America's citation, in its rebuttal, to Code of Civil Procedure section 726 lacks sufficient analysis to establish its relevance or applicability here. For example, it is not clear that the trustee's sales at issue would fall within that

26

Even if Bank of America had established that it has never owned the structures and improvements at issue, it has not shown through argument or authority how its lack of ownership of these items (as opposed to the easement itself) would affect the Schmidts' claims. Bank of America asserts that "[a] trust deed holder is not an owner and cannot be liable for encroachments." Bank of America cites only the trial court's order for that assertion.[16] Bank of America does not offer any legal authority on this point. As Bank of America acknowledges, our review of the trial court's order is *de novo*. If the Schmidts' claims must fail based on Bank of America's lack of ownership of the structures and improvements, Bank of America needed to explain why. Otherwise, the point is waived. " 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." '

---

section's "one action" rule. "[A] private sale under the power contained in the trust deed is not a *judicial* foreclosure within section 726 . . . ." (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 736; see *Birman v. Loeb* (1998) 64 Cal.App.4th 502, 509 ["The nonjudicial foreclosure was not an action within the meaning of section 726."].) The record shows that Bank of America effected at least two trustee's sales to take title to various portions of the Aragon parcel, and that the deed of trust tendered by Barratt specifically authorized successive sales, in addition to other judicial and non-judicial remedies.

[16]    Bank of America's briefing contains numerous factual and legal assertions that are supported only by citation to the trial court's orders or hearings below. Citations to the trial court's orders and statements have no evidentiary or persuasive value where, as here, we must conduct an independent review of the trial court's ruling. Where Bank of America's assertions are supported only by reference to the trial court's orders or statements, we may properly consider them waived. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

[Citation.] 'We are not bound to develop appellants' argument for them.' " (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.) Because Bank of America has not explained why it is entitled to summary judgment on this ground, we cannot affirm on this basis.[17]

B

Bank of America also contends that the Aragon HOA, and not Bank of America, controls and maintains the easement area, including the allegedly offending structures and improvements. We agree that the Aragon CC&R's require the Aragon HOA to "maintain the Offsite Maintenance Areas . . . in a good condition of maintenance and repair [in] accordance with all City requirements."

Bank of America does not explain how this maintenance provision absolves it of liability for the presence of the structures and improvements or for the use of the easement by the various owners of the Aragon parcel (including Bank of America). Nor does Bank of America otherwise explain how this provision affects the Schmidts' ability to prove their causes of action. Because Bank of America has not met its initial burden of establishing an entitlement to summary judgment on this ground, we cannot affirm on this basis.

---

[17] Similarly, the Aragon HOA's assertion that it "did not in any way participate in the construction or improvement of the Project, nor in the improvements of the Easement" is unaccompanied by any argument or legal authority that would support its implied contention that it is entitled to summary judgment based on that alleged fact. We therefore treat the Aragon HOA's contention that we should affirm the judgment on this basis as waived. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

28

C

Bank of America argues that only the Aragon HOA, and not it, "owns" the reserved easement. Bank of America contends that the reserved easement was appurtenant to the Aragon parcel and that Barratt's transfer of one part of the Aragon parcel to the Aragon HOA automatically transferred all rights to the easement. When Bank of America later took title to other portions of the Aragon parcel, it argues, all rights to the easement had already passed to the Aragon HOA. Although we agree that the reserved easement is appurtenant (see fn. 6, *ante*), Bank of America has not shown that Barratt transferred all rights to the reserved easement to the Aragon HOA.

"In case of partition of the dominant tenement the burden must be apportioned according to the division of the dominant tenement, but not in such a way as to increase the burden upon the servient tenement." (§ 807; see *Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 572.) "Each separately owned parcel is entitled to make the uses privileged by an easement or profit; provided, however, that if apportionment is required to avoid an unreasonable increase in the burden on the servient estate, the use rights are appropriately apportioned among the parcels." (Rest.3d Property, Servitudes, § 5.7, subd. (1).)

Here, Barratt effectively subdivided the dominant Aragon parcel among various individual owners, including both the Aragon HOA and Bank of America. The Aragon HOA and Bank of America thus both have rights of use over, and accordingly "own," the

29

reserved easement.[18]  The fact that Barratt conveyed a portion of the Aragon parcel to the Aragon HOA first is of no moment.  There is no evidence that Barratt gave up the right to use the reserved easement that attached to the remainder of the Aragon parcel, a portion of which was later conveyed to Bank of America.  Bank of America's argument is further undermined by the second trustee's deed obtained by Bank of America, which expressly recites the reserved easement in the conveyance to Bank of America.  On the current record, Bank of America is not entitled to summary judgment on this ground.

IV

As a further alternative ground, Bank of America argues that it "is merely a lender" with respect to the Aragon project and thus cannot be liable for Schmidt's claims under section 3434.  Section 3434 provides as follows:

> "A lender who makes a loan of money, the proceeds of which are used or may be used by the borrower to finance the design, manufacture, construction, repair, modification or improvement of real or personal property for sale or lease to others, shall not be held liable to third persons for any loss or damage occasioned by any defect in the real or personal property so designed, manufactured, constructed, repaired, modified or improved or for any loss or damage resulting from the failure of the borrower to use due care in the design, manufacture, construction, repair, modification or improvement of such real or personal property, unless such loss or damage is a result of an act of the lender outside the scope of the activities of a lender of money or unless the lender has been a party to misrepresentations with respect to such real or personal property."

---

18    For its part, the Aragon HOA states that it "does *not* exclusively own the Easement but rather the [Aragon HOA] has the right to use it just like Bank of America."  (Italics added.)  The Aragon HOA further explains that "[a]s a result of the 2008 and 2010 Foreclosures, under Section 2.26 of the CC&R's, Bank of America succeeded to Barratt's position as 'Declarant' with the potential rights to create or modify easements."

30

As a preliminary matter, Bank of America argues that the Schmidts have waived their ability to argue that the court's judgment cannot be affirmed on this ground because they allegedly failed to address section 3434 in their opening brief. "Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 (*Reyes*).)

Here, the Schmidts' opening brief discussed Bank of America's contention that it was a "mere construction lender" and provided argument and factual support for their position that Bank of America's involvement in the Aragon project went beyond lending. While the Schmidts do not explicitly mention section 3434, it is plain that their argument is directed at Bank of America's defense based on that section. Under these circumstances, the Schmidts have not waived their ability to challenge the trial court's judgment on this basis.

On the merits, Bank of America has provided no argument or analysis regarding why section 3434 would support the court's summary judgment ruling. Bank of America merely cites the trial court order for support. This is insufficient. (See, fn. 16, *ante*.) For example, Bank of America does not explain how its ownership of various portions of the Aragon parcel, which is undisputed, is within "the scope of the activities of a lender of money." (§ 3434.) Because Bank of America has not shown that the Schmidts' claims are founded solely on its activities as a lender of money, rather than "act[s] of the lender

31

outside the scope of the activities of a lender of money," summary judgment is unavailable on this ground on the current record. (*Ibid.*)

V

As a final alternative ground, Bank of America argues that former section 1365.9 entitles it to summary judgment on the Schmidts' claims. That section provided: "Any cause of action in tort against any owner of a separate interest arising solely by reason of an ownership interest as a tenant in common in the common area of a common interest development shall be brought only against the association . . . ." (Former § 1365.9, subd. (b).) In order to invoke this section, Bank of America must show that "[t]he association maintained and has in effect for this cause of action, one or more policies of insurance which include coverage for general liability of the association." (Former § 1365.9, subd. (b)(1).) The relevant association here is the Aragon HOA.

To establish this requirement, Bank of America relies on the declaration of Curt LaBarre, an insurance agent who was involved in obtaining liability insurance policies for the Aragon HOA. Attached to LaBarre's declaration are two insurance policies for the Aragon HOA, one general liability policy and one umbrella liability policy. As to each, LaBarre's declaration states, "Coverage for this policy includes tort claims." Bank of America argues that because the Schmidts' causes of action are based in tort, and because the Aragon HOA has insurance that covers tort claims, the insurance requirement of former section 1365.9 is satisfied.

Bank of America's showing is insufficient. It does not address whether the Aragon HOA's insurance covers the Schmidts' causes of action as alleged in their complaint.

32

(See former § 1365.9, subd. (b)(1) [requiring that the "association maintained and has in effect *for this cause of action*, one or more policies of insurance" (italics added)].) LaBarre's statement that the Aragon HOA's "[c]overage . . . includes tort claims" does not establish or imply that the Aragon HOA's coverage includes all tort claims. Nor does LaBarre's statement address whether the Aragon HOA's coverage includes the Schmidts' causes of action specifically. While the policies themselves might shed light on the coverage (if any) that would be applicable to the Schmidts' claims, Bank of America has not pointed to any portion of the policies to support its argument. Together, the general and umbrella liability policies contain more than two hundred pages of endorsements, qualifications, and exclusions. We are not required to independently review and analyze the various policy provisions to determine whether they might support Bank of America's position and satisfy its burden on summary judgment. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

Because Bank of America has not shown that the Aragon HOA's insurance policies satisfy the insurance requirements of former section 1365.9, subdivision (b), the trial court's summary judgment cannot be affirmed on this ground. In light of our conclusion, we need not address the Schmidts' other contentions regarding why former section 1365.9 is not applicable here.

VI

Bank of America and the Aragon HOA argue that the Schmidts have forfeited their ability to challenge the court's judgments with respect to their causes of action for declaratory and injunctive relief because they contend the Schmidts did not discuss those

33

causes of action in their opening brief. (See *Reyes*, *supra*, 65 Cal.App.4th at p. 466, fn. 6.) The Schmidts counter that their requests for declaratory and injunctive relief are factually and legally intertwined with their other causes of action and thus cannot be severed and considered separately on appeal. (See *American Enterprise, Inc. v. Van Winkle* (1952) 39 Cal.2d 210, 217 (*American Enterprise*).)

"Generally, appellants forfeit or abandon contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal. [Citations.] Thus, failure to address summary adjudication of a claim on appeal constitutes abandonment of that claim." (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177.) In this case, however, the parties' contentions with respect to the Schmidts' requests for declaratory and injunctive relief overlap with the Schmidts' other causes of action. The trial court's order granting the Aragon HOA's motion for summary judgment treated the Schmidts' requests for declaratory and injunctive relief as entirely dependent on the Schmidts' causes of action for trespass and nuisance: "As Schmidt is unable to establish causes of action for trespass and nuisance, Schmidt has also failed to establish causes of action for declaratory and/or injunctive relief as a matter of law." Similarly, the trial court's order granting Bank of America's motion recites grounds for adjudicating the Schmidts' requests for declaratory and injunctive relief that are largely subsets of the grounds for the Schmidts' other causes of action. By asserting error in the trial court's determination of issues common to all of their causes of action, the Schmidts adequately put at issue the trial court's judgments with respect to their requests for declaratory and injunctive relief. Moreover, resolution

34

of these issues as to the Schmidts' trespass and nuisance causes of action necessarily affects the resolution of the same issues as to the Schmidts' requests for declaratory and injunctive relief.  As such, consideration of all of the Schmidts' causes of action together is proper.  (See *American Enterprise*, *supra*, 39 Cal.2d at p. 217.)

## DISPOSITION

The judgments are reversed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.